Karl J. Frisinger, SBN 278773
Coombs & Dunlap, LLP
1211 Division Street
Napa, California  94559
Telephone:  (707) 252-9100
Facsimile:  (707) 252-8516

Attorneys for Plaintiff
Benjamin Snow

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN SNOW,<br><br>          Plaintiff,<br><br>     vs.<br><br>CALIFORNIA DEPARTMENT OF STATE HOSPITALS;<br>DOLLY MATTEUCCI;<br>CINDY BLACK;<br>KATIE COOPER;<br>AND DOES 1 through 20, inclusive,<br><br>          Defendants. | No. 16-CV-01041-TEH<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**PARTIES**

1.      Plaintiff BENJAMIN SNOW ("Plaintiff" or "Mr. Snow") is, and at all times mentioned in this First Amended Complaint was, a citizen of the United States and a resident of Napa County, California.  Mr. Snow is an involuntarily committed patient at California Department of State Hospitals - Napa.  Mr. Snow has the legal capacity to sue.

2.      Defendant CALIFORNIA DEPARTMENT OF STATE HOSPITALS is a California State agency and was, at all times mentioned in this First Amended Complaint, conducting business in the State of California.

3.      Defendant DOLLY MATTEUCCI is the Director of Napa State Hospital and was, at all times mentioned in this First Amended Complaint, conducting business in the State of California

Coombs & Dunlap, LLP

1  and employed by the California Department of State Hospitals.  At all times mentioned, Dolly

2  Matteucci was the Director for the California Department of State Hospitals and was responsible for

3  the development, organization and management of Napa State Hospital.  Dolly Matteucci was

4  responsible for policy formation to ensure patient safety, including the safety of Plaintiff.

5      4.    Defendant CINDY BLACK was, at all times mentioned in this First Amended

6  Complaint, conducting business in the State of California and employed by the California

7  Department of State Hospitals.  At all times mentioned, Cindy Black was a Clinical Administrator

8  for the California Department of State Hospitals and was responsible for supervising Plaintiff and

9  Mr. Joseph Pavan's treatment program and setting policies and procedures as a member of the

10  Executive Policy Team of Napa State Hospital.

11      5.    Defendant KATIE COOPER, was, at all times mentioned in this First Amended

12  Complaint, conducting business in the State of California and employed by the California

13  Department of State Hospitals.  At all times material, Katie Cooper was a Program Director for the

14  California Department of State Hospitals and was responsible for the treatment plans and placement

15  of Mr. Snow and Mr. Pavan.  In addition Katie Cooper was responsible for establishing operational

16  policies and procedures, determining staffing requirements and ratios, and ensuring the security and

17  safety of patients including Mr. Snow.

18      6.    The true names, identities and capacities of DOES 1 through 20, inclusive, are

19  unknown to Plaintiff, who therefore sues them by these fictitious names. Plaintiff will amend this

20  First Amended Complaint when their actual names and capacities have been ascertained. Plaintiff is

21  informed and believes and so alleges that these DOE defendants are responsible in some fashion for

22  the matters alleged in this First Amended Complaint.  The DOES include but are not limited to the

23  Q3-4 and T-5 Unit Director(s) and Program Director(s) and all other Q3-4 and T-5 Unit staff and

24  doctors on duty at the time of the incident set forth in this First Amended Complaint.

25      7.    Plaintiff is informed and believes and therefore alleges that all defendants were the

26  agents and/or employees of the other defendants, and in doing the things hereinafter alleged, were

27  acting within the course and scope of such agency and/or employment.

28      8.    Defendants DOLLY MATTEUCCI; CINDY BLACK, and KATIE COOPER,

*Coombs & Dunlap, LLP* (left margin)

1  (collectively, the "Individual Defendants"), were at all times mentioned in this First Amended
2  Complaint qualified professionals able to make professional level decisions regarding Plaintiff's
3  and/or Mr. Pavan's care and were acting in the course and scope of their employment with the
4  California Department of State Hospitals.

5      9.    The Individual Defendants are sued in their individual capacity.

## JURISDICTION AND VENUE

7      10.    The jurisdiction of this Court is predicated on 28 U.S.C § 1331.  Furthermore, the
8  Court has supplemental jurisdiction of the California Tort Claims Act codified in Government Code
9  §§ 810 through 996.6 and the negligence cause of action pursuant to 28 U.S.C. § 1367.

10      11.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391
11  because at least one Defendant resides in this District and all Defendants are residents of the State of
12  California.  Further, the events giving rise to this action occurred in this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

14      12.    Plaintiff is an inpatient at Napa State Hospital.

15      13.    On or about April 9, 2015, Plaintiff was brutally attacked by Mr. Joseph Pavan ("Mr.
16  Pavan"), a fellow inpatient at Napa State Hospital.  Mr. Pavan entered Mr. Snow's room and
17  proceeded to beat him and strangle him with a cord that, upon information and belief, was a coaxial
18  cable.  The incident occurred at meal time when the majority of the unit's patients were in another
19  part of Napa State Hospital.  Mr. Snow and Mr. Pavan, however, were allowed to remain on the unit.
20  Upon information and belief, the incident occurred during a shift change when no staff or an
21  insufficient number of staff was assigned to supervise the patients on the floor.

22      14.    Upon information and belief, Defendants allowed Mr. Pavan to have the coaxial cable
23  in his possession for use in connection with a television.  Defendants allowed the cord to be of a
24  length sufficient for Mr. Pavan to strangle Mr. Snow.  Defendants did not employ a method of
25  securing the coaxial cable from removal between the wall and television.  Upon information and
26  belief, Mr. Pavan removed the coaxial cable approximately one month prior to the April 9, 2015
27  attack on Mr. Snow, and hid the cable during that month while he plotted his attack.  Defendants had
28  no method or did not undertake a method to determine if the coaxial cable had been removed during

Coombs & Dunlap, LLP

1  this month-long period.

2      15.    Upon information and belief, approximately a month prior to the assault, Mr. Pavan
3  exhibited severe signs of mental illness which made him unstable and unsuitable for his current
4  placement.  In addition, Mr. Pavan requested medication that affects his behavior prior to the assault
5  but was refused such medication.

6      16.    The attack occurred when Plaintiff and Mr. Pavan were left unattended and
7  unsupervised.  No Napa State Hospital employees witnessed the incident.  Upon information and
8  belief, Mr. Pavan walked by the nursing station with gloves on his hands and with possession of the
9  cord immediately prior to entering Plaintiff's room, and was allowed to enter Plaintiff's room.

10      17.    Upon information and belief, Defendants only learned about the assault when Mr.
11  Pavan walked back to the nurse's station, pounded on the nurse's station window, and yelled that he
12  had killed Plaintiff.

13      18.    Upon information and belief, staff found Plaintiff unresponsive, without a pulse and
14  lying in a pool of his own blood.

15      19.    Upon information and belief, at all times relevant Mr. Pavan was known to
16  Defendants to be violent and dangerous and a threat to himself and others within the Hospital.  At
17  the time of the incident, Defendants were aware that Mr. Pavan had previously stabbed a nurse in the
18  neck while at a California Department of State Hospital, and had committed other violent crimes.

19      20.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered serious
20  and permanent injury, loss, and damage.  He sustained injuries to his body including but not limited
21  to his head, face, mouth, and neck.  Plaintiff has sustained and will continue to sustain medical bills.
22  Plaintiff has sustained and will continue to sustain pain and suffering.  Plaintiff may also sustain
23  future wage loss.

24      21.    On or about September 15, 2015, Plaintiff filed a Government Claim Form with the
25  Victim Compensation and Government Claims Board by presenting the applicable claims arising
26  from the incident set forth in this First Amended Complaint.

27      22.    On or about October 23, 2015, the Victim Compensation and Government Claims
28  Board sent Plaintiff a letter rejecting the claim.

Coombs & Dunlap, LLP

**FIRST CAUSE OF ACTION – UNDER 42 U.S.C. § 1983**

**(AGAINST THE INDIVIDUAL DEFENDANTS)**

23. Plaintiff realleges and incorporates Paragraphs 1 through 22.

24. This is an action brought under 42 U.S.C. § 1983 to recover damages for a violation of Plaintiff's clearly established federal constitutional rights under the Fourteenth Amendment to the United States Constitution to be provided safe conditions in Napa State Hospital.

25. The Individual Defendants were, at all times mentioned in this First Amended Complaint, acting under color of state law.

26. The Individual Defendants violated Plaintiff's Fourteenth Amendment rights by acting with conscious indifference by failing to provide Plaintiff safe conditions at Napa State Hospital, including but not limited to (i) failing to provide proper supervision of Plaintiff and/or Mr. Pavan, (ii) failing to provide a sufficient number of appropriate personnel to provide for the safety of Plaintiff, (iii) leaving Mr. Pavan, a known violent and dangerous patient, unattended and unsupervised and allowing him unsupervised, unmonitored, and uncontrolled access to and use of objects that can be used as dangerous weapons, including the cord used to strangle Plaintiff, (iv) failing to warn Plaintiff of the danger, (v) failing to protect Plaintiff, (vi) failing to abide by or institute internal policies to protect Plaintiff, and (vii) failing to abide by external policies, including but not limited to standards set forth by the Joint Commission and Center for Medicare and Medicaid Services, and (viii) failing to abide by 22 C.C.R. § 73523.

27. Defendant Dolly Matteucci was responsible for policy formation and to ensure Plaintiff's safety. The policies, lack of policies implemented by her, or failure to ensure the policies were followed, allowed Mr. Pavan to have unsupervised, unsecured, and unmonitored access to a cord in a length adequate to strangle a person, allowed Mr. Pavan and Plaintiff to remain in the unit unsupervised during meal time and/or at the change of shift, allowed Mr. Pavan to wander the hall and enter Plaintiff's room without supervision or restriction, and allowed for an inadequate amount of trained staff to ensure Plaintiff's safety. Defendant Dolly Matteucci's failure to adhere to or to develop adequate policies, procedures, and staffing reflects a conscious indifference to the constitutional rights of Plaintiff. The above acts or failures to act were not in accordance with

professional standards to prevent the harm from occurring and were a direct and proximate cause of the April 9, 2015 incident. Defendant Dolly Matteucci knew or should have known that her failures described above could result in constitutional harm to Plaintiff.

28. Defendant Cindy Black was responsible for supervising Plaintiff's and Mr. Pavan's treatment programs and setting policies and procedures as a member of the Executive Policy Team of Napa State Hospital. The policies, lack of policies implemented by her, or failure to enforce the policies allowed Mr. Pavan to have unsupervised, unsecured, and unmonitored access to a cord in a length adequate to strangle a person, allowed Mr. Pavan and Plaintiff to remain in the unit unsupervised during meal time and/or at the change of shift, allowed Mr. Pavan to wander the hall and enter Plaintiff's room without supervision or restriction, improperly placed or allowed Mr. Pavan to remain on the unit where the incident occurred, and allowed for an inadequate amount of trained staff to ensure Plaintiff's safety. The failure to adhere to or to develop adequate policies, procedures, and staffing reflects a conscious indifference to the constitutional rights of Plaintiff. The above acts or failures to act were not in accordance with professional standards to prevent the harm from occurring and were a direct and proximate cause of the April 9, 2015 incident. Defendant Cindy Black knew or should have known that her failures described above could result in constitutional harm to Plaintiff.

29. Defendant Katie Cooper was responsible for establishing the treatment plans and placement of Plaintiff and Mr. Pavan, establishing operational policies and procedures, determining staffing requirements and ratios, and ensuring the security and safety of patients including Plaintiff. The policies, lack of policies, or failure to enforce the policies allowed Mr. Pavan to have unsupervised, unsecured, and unmonitored access to a cord in a length adequate to strangle a person, allowed Mr. Pavan and Plaintiff to remain in the unit unsupervised during meal time and/or at the change of shift, allowed Mr. Pavan to wander the hall and enter Plaintiff's room without supervision, improperly placed or allowed Mr. Pavan to remain on the unit where the incident occurred, and allowed for an inadequate amount of trained staff to ensure Plaintiff's safety. The failure to adhere to or to develop adequate policies, procedures, and staffing reflects a conscious indifference to the constitutional rights of Plaintiff. The above acts or failures to act were not in accordance with

1  professional standards to prevent the harm from occurring and were a direct and proximate cause of
2  the April 9, 2015 incident.  Defendant Katie Cooper knew or should have known that her failures
3  described above could result in constitutional harm to Plaintiff.

4  30.  In acting as alleged in this First Amended Complaint, the Individual Defendants
5  violated Plaintiff's due process right to be provided safe conditions by hospital personnel which is
6  guaranteed by the Fourteenth Amendment to the United States Constitution.

7  31.  As a direct and proximate result of the Individual Defendants' actions, Plaintiff has
8  suffered serious and permanent injury, loss, and damage.  He sustained injuries to his body including
9  but not limited to his head, face, mouth, and neck.  Plaintiff has sustained and will continue to
10 sustain medical bills.  Plaintiff has sustained and will continue to sustain pain and suffering.
11 Plaintiff may also sustain future wage loss.

12 32.  In acting as alleged in this First Amended Complaint, the Individual Defendants acted
13 knowingly, willfully, and maliciously, and with reckless and callous disregard for Plaintiff's
14 federally protected rights.

### SECOND CAUSE OF ACTION – FAILURE TO DISCHARGE A MANDATORY DUTY
### (AGAINST DEFENDANT CALIFORNIA DEPARTMENT OF STATE HOSPITALS)

17 33.  Plaintiff realleges Paragraphs 1 through 32.

18 34.  Defendant California Department of State Hospitals operates a medical facility in
19 Napa that is subject to regulation by the State Department of Health Services, Social Services,
20 Developmental Services, or Mental Health.

21 35.  Defendant California Department of State Hospitals failed to provide adequate and/or
22 sufficient personnel and/or facilities as required by 22 C.C.R. § 71000 et seq., 22 C.C.R. § 73000 et.
23 seq., California Government Code § 855, and other regulations setting forth staffing levels required
24 for acute psychiatric hospitals, intermediate care facilities, and skilled nursing facilities. This failure
25 includes, but is not limited to, a violation of 22 C.C.R. § 71225, which requires Napa State Hospital
26 to provide a sufficient number of appropriate personnel for the safety of its patients.  Pursuant to
27 Government Code § 815.6, the duties set forth in 22 C.C.R. § 71000 et seq., § 855, and other
28 regulations setting forth staffing levels required for acute psychiatric hospitals, intermediate care

facilities, and skilled nursing facilities are mandatory duties.

36. Defendant California Department of State Hospitals violated Plaintiff's Patient Rights, including rights set forth in 22 C.C.R. § 73523, and specifically the right to be free from physical abuse.

37. The enacting body sought to prevent injuries like those sustained by Plaintiff by imposing the mandatory duty set forth in 22 C.C.R. § 71000 et seq., § 855, 22 C.C.R. § 73000 et seq., and the staffing levels required for acute psychiatric hospitals, intermediate care facilities, and skilled nursing facilities

38. As a direct and proximate result of Defendant California Department of State Hospitals' failures described herein, Plaintiff has suffered serious and permanent injury, loss, and damage. He sustained injuries to his body including but not limited to his head, face, mouth, and neck. Plaintiff has sustained and will continue to sustain medical bills. Plaintiff has sustained and will continue to sustain pain and suffering. Plaintiff may also sustain future wage loss.

## THIRD CAUSE OF ACTION – FAILURE TO PROVIDE ADEQUATE EQUIPMENT OR PERSONNEL & VIOLATION OF PATIENT RIGHTS (AGAINST DEFENDANT CALIFORNIA DEPARTMENT OF STATE HOSPTIALS)

39. Plaintiff realleges Paragraphs 1 through 38.

40. Defendant California Department of State Hospitals operates a medical facility at Napa which is subject to regulation by the State Department of Health Services, Social Services, Developmental Services, or Mental Health.

41. Defendant California Department of State Hospitals failed to provide adequate and/or sufficient personnel and/or facilities as required by 22 C.C.R. § 71000 et seq., 22 C.C.R. § 73000 et seq. California Government Code § 855, and other regulations setting forth staffing levels required for acute psychiatric hospitals, intermediate care facilities, and skilled nursing facilities. This failure includes, but is not limited to, a violation of 22 C.C.R. § 71225, which requires Napa State Hospital to provide a sufficient number of appropriate personnel for the safety of its patients.

42. Defendant California Department of State Hospitals violated Plaintiff's Patient Rights, including rights set forth in 22 C.C.R. § 73523, specifically the right to be free from physical

1  abuse.

2  43.    As a direct and proximate result of Defendant California Department of State
3  Hospitals' failures described herein, Plaintiff has suffered serious and permanent injury, loss, and
4  damage.  He sustained injuries to his body including, but not limited to his head, face, mouth, and
5  neck.  Plaintiff has sustained and will continue to sustain medical bills.  Plaintiff has sustained and
6  will continue to sustain pain and suffering.  Plaintiff may also sustain future wage loss.

## FOURTH CAUSE OF ACTION – NEGLIGENCE
### (AGAINST ALL DEFENDANTS)

9  44.    Plaintiff realleges Paragraphs 1 through 43.

10 45.    Defendants had a special relationship with Plaintiff and Mr. Pavan, in that Plaintiff
11 and Mr. Pavan were inpatients at Napa State Hospital and were under the care, control, and
12 supervision of Napa State Hospital and its employees.

13 46.    Defendants had a legal duty to protect Plaintiff and to warn him of danger.

14 47.    Defendants breached this duty by (i) placing Plaintiff in an environment known to be
15 dangerous, with persons known to be dangerous, and with inadequate staff to provide for the safety
16 of Plaintiff; (ii) failing to provide proper supervision of Plaintiff and/or Mr. Pavan, including
17 allowing Mr. Pavan access to unsafe items including the cord used to strangle Plaintiff; (iii) failing
18 to warn Plaintiff of the danger; (iv) failing to protect Plaintiff; (v) failing to abide by internal policies
19 to protect Plaintiff; (vi) failing to abide by external policies, including but not limited to standards
20 set forth by the Joint Commission and Center for Medicare and Medicaid Services; and (vii) failing
21 to ensure that Plaintiff's right to be free from physical abuse was not violated.

22 48.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered serious
23 and permanent injury, loss, and damage.  He sustained injuries to his body including but not limited
24 to his head, face, mouth, and neck.  Plaintiff has sustained and will continue to sustain medical bills.
25 Plaintiff has sustained and will continue to sustain pain and suffering.  Plaintiff may also sustain
26 future wage loss.

27 49.    As alleged in this First Amended Complaint, Defendants acted knowingly, willfully,
28 and maliciously, and with reckless and callous disregard for Plaintiff's rights.

## FIFTH CAUSE OF ACTION RESPONDEAT SUPERIOR –

## PUSUANT TO GOVERNMENT CODE § 815.2

### (AGAINST DEFENDANT CALIFORNIA DEPARTMENT OF STATE HOSPITALS)

50. Plaintiff realleges Paragraphs 1 through 49.

51. At all times herein mentioned, the Individual Defendants were the agents and employees of Defendant California Department of State Hospitals and, in doing the acts herein described and referred to, were acting in the course and within the scope of their authority as agents and employees, and in the transaction of the business of the employment or agency. Defendant California Department of State Hospitals is, therefore, liable to Plaintiff for the acts of the Individual Defendants as heretofore alleged.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury to decide all issues so triable in this case.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For compensatory damages, in an amount to be determined according to proof at trial;

2. For punitive damages against the Individual Defendants, in an amount to be determined according to proof at trial;

3. For reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

4. For costs of suit incurred in this action; and

5. For such other and further relief as the Court deems proper.

Date: April 14, 2016                    COOMBS & DUNLAP, LLP


                                        By: /s/ Karl J. Frisinger
                                            Karl J. Frisinger
                                            Attorneys for Plaintiff Benjamin Snow