UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN SNOW,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA DEPARTMENT OF STATE HOSPITALS, et al.,<br><br>　　　　Defendants. | Case No. 16-cv-01041-TEH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

This matter comes before the Court on Defendants' motion to dismiss the first amended complaint. After carefully reviewing the parties' written arguments, the Court finds the matter suitable for resolution without oral argument, *see* Civil L.R. 7-1(b), and now GRANTS IN PART and DENIES IN PART Defendants' motion as discussed below.

**BACKGROUND**

Plaintiff Benjamin Snow, an inpatient at Napa State Hospital, seeks damages from injuries sustained after he was attacked by Joseph Pavan, a fellow inpatient. He contends that, on April 9, 2015, Pavan entered his room "and proceeded to beat him and strangle him with a cord that, upon information and belief, was a coaxial cable." First Am. Compl. ("FAC") ¶ 13. Pavan allegedly had the cable "in his possession for use in connection with a television" but disconnected the cable and hid it for approximately one month "while he plotted his attack" against Snow. *Id.* ¶ 14. The attack is alleged to have "occurred at meal time when the majority of the unit's patients were in another part of Napa State Hospital. Mr. Snow and Mr. Pavan, however, were allowed to remain on the unit. Upon information and belief, the incident occurred during a shift change when no staff or an insufficient number of staff was assigned to supervise the patients on the floor." *Id.* ¶ 13. No employees witnessed the incident, and no one learned of the attack until "Pavan walked back to the nurse's station, pounded on the nurse's station window, and yelled that he had

killed Plaintiff." *Id.* ¶ 17. Staff allegedly "found Plaintiff unresponsive, without a pulse, and lying in a pool of his own blood." *Id.* ¶ 18.

Snow brings this suit against Defendants California Department of State Hospitals ("DSH"); Dolly Matteucci, the director of Napa State Hospital;[1] Cindy Black, a clinical administrator at Napa State Hospital; and Katie Cooper, a program director at Napa State Hospital. Matteucci is alleged to be "responsible for the development, organization and management of Napa State Hospital." *Id.* ¶ 3. Black is alleged to be "responsible for supervising Plaintiff and Mr. Joseph Pavan's treatment program and setting policies and procedures as a member of the Executive Policy Team of Napa State Hospital." *Id.* ¶ 4. And Cooper is alleged to be "responsible for the treatment plans and placement of Mr. Snow and Mr. Pavan," as well as "for establishing operational policies and procedures, determining staffing requirements and ratios, and ensuring the security and safety of patients." *Id.* ¶ 5.

Snow alleges that "Mr. Pavan was known to Defendants to be violent and dangerous and a threat to himself and others within the Hospital. At the time of the incident, Defendants were aware that Mr. Pavan had previously stabbed a nurse in the neck while at a California Department of State Hospital, and had committed other violent crimes." *Id.* ¶ 19. Pavan also allegedly "exhibited severe signs of mental illness which made him unstable and unsuitable for his current placement" and "requested medication that affects his behavior prior to the assault but was refused such medication." *Id.* ¶ 15.

Based on these allegations, Snow brings five causes of action: (1) violation of 42 U.S.C. § 1983, based on the Fourteenth Amendment, against the individual defendants; (2) failure to discharge a mandatory duty against DSH; (3) failure to provide adequate equipment or personnel and violation of patient rights against DSH; (4) negligence against

---

[1] The FAC also alleges that Matteucci was "the Director for the California Department of State Hospitals," FAC ¶ 3, but the rest of this paragraph indicates that she is alleged to be the director of Napa State Hospital, not the entire Department of State Hospitals.

2

all defendants; and (5) respondeat superior, pursuant to California Government Code section 815.2, against DSH. Defendants seek dismissal of the entire complaint.

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In ruling on a motion to dismiss, courts must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). However, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

**DISCUSSION**

**I.   Capacity to Sue**

Defendants first argue that this case must be dismissed because Snow has not adequately alleged his capacity to sue. However, Defendants concede that capacity to sue need not be alleged "[e]xcept when required to show that the court has jurisdiction," an exception Defendants do not argue is applicable here. Fed. R. Civ. P. 9(a)(1).

In addition, although Snow is a mental health patient, Defendants have not cited any authority to support the proposition that such individuals necessarily lack the capacity to

1   sue. Nor have Defendants suggested that Snow "lacks the capacity to understand the
2   nature or consequences of the proceeding, or is unable to assist counsel in the preparation
3   of the case." *Golden Gate Way, LLC v. Stewart*, Case No. C 09-04458 DMR, 2012 WL
4   4482053, at *2 (N.D. Cal. Sept. 28, 2012) (describing standard for determining capacity to
5   sue). Moreover, even if Snow lacks legal capacity, Defendants have not argued, let alone
6   demonstrated, that Snow's representation by counsel is insufficient to protect Snow's
7   interests. *See, e.g., Davis v. Walker*, 745 F.3d 1303, 1311 (9th Cir. 2014) (citing *Krain v.
8   Smallwood*, 880 F.2d 1119, 1121 (9th Cir. 1989)) (appointing counsel "would have likely
9   been sufficient" to protect the interests of an incompetent party). Accordingly,
10  Defendants' motion to dismiss on grounds of capacity to sue is DENIED.

## II.   Defendant California Department of State Hospitals

Defendants next argue that Defendant DSH must be dismissed because it is immune from suit as an arm of the state that has not consented to this lawsuit. Snow urges the Court to find otherwise, but he "acknowledges that his argument constitutes the minority position as set forth in the dissenting opinions of *Pennhurst* [*State School & Hospital v. Halderman,* 465 U.S. 89 (1984)]." Opp'n at 8. This Court, however, is not free to adopt the reasoning in dissenting opinions of the Supreme Court when binding precedent requires otherwise, as it does here:

> The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state. Though its language might suggest otherwise, the Eleventh Amendment has long been construed to extend to suits brought against a state by its own citizens, as well as by citizens of other states. . . . [This] jurisdictional bar covers suits naming state agencies and departments as defendants, and applies whether the relief sought is legal or equitable in nature.

*Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir. 1991) (citations omitted) (citing, among others, *Pennhurst*, 465 U.S. at 100). DSH has not consented to this suit, and Defendants' motion to dismiss all claims against DSH is therefore GRANTED. Because "it is clear . . . that the complaint could not be saved by

4

1  amendment," dismissal is with prejudice. *Eminence Capital, LLC v. Aspeon, Inc.*, 316
2  F.3d 1048, 1052 (9th Cir. 2003) (per curiam).

**III. Fourteenth Amendment Claim Against Individual Defendants**

The Court now turns to the § 1983 claims against the individual defendants based on an alleged violation of the Fourteenth Amendment. "Involuntarily committed patients in state mental health hospitals have a Fourteenth Amendment due process right to be provided safe conditions by the hospital administrators." *Ammons v. Wash. Dep't of Soc. & Health Servs.*, 648 F.3d 1020, 1027 (9th Cir. 2011). Under the so-called "*Youngberg* professional judgment standard," "whether a hospital administrator has violated a patient's constitutional rights is determined by whether the administrator's conduct diverges from that of a reasonable professional." *Id.* (referring to *Youngberg v. Romeo*, 457 U.S. 307 (1982)). "[I]n the face of known threats to patient safety, state officials may not act (or fail to act) with conscious indifference, but must take adequate steps in accordance with professional standards to prevent harm from occurring." *Neely v. Feinstein*, 50 F.3d 1502, 1508 (9th Cir. 1995).

Here, Snow alleges that Defendants knew Pavan was "violent and dangerous and a threat to himself and others within the Hospital," based in part on his prior stabbing of a nurse and commission of other violent crimes. FAC ¶ 19. This is sufficient to allege Defendants' knowledge of a threat to patient safety. Defendants argue that, under *Estate of Conners v. O'Connor*, 846 F.2d 1205 (9th Cir. 1988), "Plaintiff must plead specific facts showing a 'well known' and 'demonstrated threat' to Plaintiff's safety by Mr. Pavan." Mot. at 7. However, nothing in *Estate of Conners* – a summary judgment case involving a patient at Napa State Hospital who was murdered by another patient, John Duncan – addresses pleading requirements. In addition, although the court noted that Duncan had "demonstrated homicidal propensities" such that his "character was . . . well known to someone in the hospital, if not to these named defendants," *id.* at 1206-07 & n.2, these

1    were statements of fact on which the court's decision did not rest.[2]  Moreover, to the
2    extent that Defendants contend that Pavan must have posed a threat specifically to Snow
3    before they can be liable for failing to protect him, *Estate of Conners* forecloses that
4    argument.  The only question in that case was whether defendants failed to provide a safe
5    environment by allowing Duncan "to roam the grounds of the hospital under official and
6    de facto policies then in effect," *id.* at 1207; there was no mention of any threat to Conners
7    specifically, but the Ninth Circuit nonetheless affirmed the denial of summary judgment to
8    defendants.

9    Defendants also argue that Snow has failed to "plead that each Government-official
10   defendant, through the official's own individual actions, has violated the Constitution."
11   *Iqbal*, 556 U.S. at 676.  They ask the Court to follow *Mix v. King*, Case No. 1:13-cv-
12   00823-MJS (PC), 2013 WL 3339045, at *1-2 (E.D. Cal. July 2, 2013), which dismissed
13   the complaint with leave to amend where plaintiff contended that "Defendant King and her
14   agents knew that the attacker was a 'ticking time-bomb' and took no action to protect
15   Plaintiff," and found that the plaintiff needed to "describ[e] in more detail the
16   circumstances of the events at issue."  In an attempt to underscore their position,
17   Defendants ask a series of rhetorical questions, such as "Did [Defendant Cooper] open the
18   door to Plaintiff's room?  Did she give Mr. Pavan a key? . . . .  Did [Defendant Black]
19   walk up to Mr. Pavan and give him a cord?  Did she buy him a cord?  Did Mr. Pavan ask
20   for a cord and did each 'Individual Defendant' give him the same cord repeatedly?"  Reply
21   at 2.

22   However, the complaint is abundantly clear that Snow does not allege that any
23   individual defendant physically opened the door to Snow's room to allow Pavan entry or

---

[2] The latter statement also indicates that the Ninth Circuit did not find it necessary to conclude that the defendants themselves had actual knowledge of the threat posed by Duncan.  Similarly, in *Youngberg*, which established the professional judgment standard at issue here, the plaintiff alleged that defendants "knew, or *should have known*, that [the plaintiff] was suffering injuries and that they failed to institute appropriate preventive procedures."  *Youngberg*, 457 U.S. at 310 (emphasis added).  Thus, actual knowledge does not appear to be required, but the Court does not decide this issue because it was not raised by the parties and does not affect resolution of this motion.

United States District Court
Northern District of California

1 gave Pavan a cord long enough to strangle someone. To the contrary, the FAC alleges the
2 liability of each defendant based on allegations that each is responsible for policies and
3 procedures at Napa State Hospital, and that:

> [t]he policies, lack of policies implemented by her, or failure to ensure the policies were followed, allowed Mr. Pavan to have unsupervised, unsecured, and unmonitored access to a cord in length adequate to strangle a person, allowed Mr. Pavan and Plaintiff to remain in the unit unsupervised during meal time and/or at the change of a shift, allowed Mr. Pavan to wander the hall and enter Plaintiff's room without supervision or restriction, and allowed for an inadequate amount of trained staff to ensure Plaintiff's safety.

FAC ¶ 27 (Defendant Matteucci); *id.* ¶¶ 28-29 (identical allegations for Defendants Black and Cooper, except for the addition of "improperly placed or allowed Mr. Pavan to remain on the unit where the incident occurred" to the list of alleged deficiencies). Snow further alleges that these defendants' action or inaction "were not in accordance with professional standards," *id.*, including "standards set forth by the Joint Commission and Center for Medicare and Medicaid Services," *id.* ¶ 26. These allegations, which are more detailed than those at issue in *Mix*, adequately set forth what each defendant allegedly failed to do to protect Snow's safety.

Defendants might later argue that they are not, in fact, liable because the facts of this case do not establish that one or more of the individual defendants knew (or, potentially, should have known, *see supra* n.2) of the threat posed by Pavan, or that they did not actually have the responsibilities at the hospital that Snow alleges, or that there is no evidence that one or more of them failed to act as a reasonable professional would have under the circumstances, or any number of other issues that might result in summary judgment or a favorable verdict at trial. At this early stage of the proceedings, however, the Court must assume the truth of Snow's factual allegations, which are sufficient to state a plausible claim for relief against each individual defendant.

The Court likewise concludes that finding any of the defendants qualifiedly immune at this stage would be improper. Qualified immunity protects an officer who "reasonably believes that his or her conduct complies with the law." *Pearson v. Callahan*, 555 U.S.

7

223, 244 (2009). It "shields state officers from civil liability for damages unless (1) the facts alleged by the plaintiff establish a violation of the plaintiff's constitutional rights; and (2) the constitutional right in question was 'clearly established' when the defendant committed his alleged misconduct." *Ammons*, 648 F.3d at 1026 (citing *Pearson*, 555 U.S. at 231-32). The Court has already addressed the first prong in finding the allegations sufficient to state a claim for relief. The second prong is also satisfied, as it is "amply demonstrate[d]" that the *Youngberg* professional judgment standard is "clearly established." *Neely*, 50 F.3d at 1508. A reasonable hospital administrator would know that he or she must, "in the face of known threats to patient safety, . . . take adequate steps in accordance with professional standards to prevent harm from occurring." *Id.* The Court cannot conclude that the alleged policy or supervision failures – which the Court must assume to be true – were, as a matter of law, a reasonable exercise of professional judgment, and the Court therefore cannot grant qualified immunity to the individual defendants at this stage of the proceedings.[3] For all of these reasons, the Court DENIES Defendants' motion to dismiss Snow's § 1983 claim against the individual defendants.

## IV. Negligence Claim Against Individual Defendants

Finally, Defendants move to dismiss Snow's negligence claim against the individual defendants by arguing, first, that Snow has failed to allege a duty owed by the defendants and, second, that the defendants are immune under California Civil Code section 43.92. The Court rejects both arguments. First, Defendants have cited no authority for the proposition that administrators owe no duty of care to patients in the hospital over which they have oversight. Second, California Civil Code section 43.92 provides that a "psychotherapist," as defined in California Evidence Code section 1010, shall not be liable for money damages for "failing to protect from a patient's threatened violent behavior or failing to predict and protect from a patient's violent behavior except if the patient has

---

[3] Qualified immunity might be appropriate at a later stage if Snow's allegations are ultimately shown to be untrue.

8

1   communicated to the psychotherapist a serious threat of physical violence against a
2   reasonably identifiable victim or victims." Defendants argue that section 1010 "provides a
3   sweepingly broad scope to include virtually anyone in the chain of psychotherapeutic
4   treatment to fall under the umbrella of 'psychotherapist.'" Reply at 8. However,
5   Defendants have not argued that the individual defendants fall within the definition of any
6   of section 1010's sixteen subparagraphs, none of which appears to include administrators.
7   They have therefore failed to persuade the Court that dismissal of Snow's negligence claim
8   against the individual defendants is proper, and their motion is DENIED.

10  **CONCLUSION**
11      For the reasons discussed above, Defendants' motion to dismiss Snow's first
12  amended complaint is GRANTED IN PART and DENIED IN PART. Defendant
13  California Department of State Hospitals is dismissed without leave to amend. The motion
14  is denied in all other respects.

16  **IT IS SO ORDERED.**

18  Dated: 05/31/16                              _____
19                                               THELTON E. HENDERSON
                                                 United States District Judge